## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JOSE A. QUINTERO,**
        **Petitioner,**

**v.**                                          **Case No.  4:08cv318/RH/MD**

**WALTER A. MCNEIL,**
        **Respondent.**

_____

### REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Doc. 5). Respondent has filed a response, submitting relevant portions of the state court record. (Doc. 15). Petitioner has replied. (Doc. 21). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition should be denied.

### BACKGROUND AND PROCEDURAL HISTORY

On June 11, 2003, petitioner was convicted upon jury verdict of Sexual Battery on a Child Under 12 Years of Age by Defendant 18 Years of Age or Older (Count I) and Lewd or Lascivious Molestation of a Child by a Defendant 18 Years of Age or Older (Count II) in the Circuit Court of Liberty County, Florida, case number 02-34.

(Doc. 15, Ex. G).[1]  The victim of the crimes was S.S.  Petitioner was sentenced to life imprisonment on Count I, and a concurrent term of 104.4 months imprisonment on Count II.  (Ex. H).  Petitioner's convictions and sentences were affirmed on direct appeal, in a published opinion issued December 30, 2004.  *Quintero v. State*, 889 So.2d 1013 (Fla. 1st DCA 2004) (copy at Ex. L).  Petitioner filed a notice to invoke the discretionary jurisdiction of the Supreme Court of Florida.  (Ex. N).  On April 25, 2005, the state supreme court declined to accept jurisdiction and denied the petition for review.  *Quintero v. State*, 902 So.2d 791 (Fla. 2005) (Table) (copy at Ex. Q).

On August 19, 2005 petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. R). The trial court denied relief, (Ex. S), and the appellate court affirmed without written opinion.  *Quintero v. State*, 926 So.2d 1276 (Fla. 1st DCA 2006) (Table) (copy at Ex. U).  The mandate issued May 8, 2006.

On April 26, 2006 petitioner filed in the Florida First District Court of Appeal ("First DCA") a state habeas corpus petition alleging ineffective assistance of appellate counsel.  (Ex. V).  The First DCA denied relief on June 20, 2006.  *Quintero v. State*, 931 So.2d 254 (Fla. 1st DCA 2006) (copy at Ex. W).

On August 16, 2006 petitioner filed another motion for post-conviction relief under Rule 3.850.  (Ex. X).  The trial court denied the motion as procedurally barred.  (Ex. Y).  The First DCA affirmed the denial order without written opinion on November 29, 2007.  *Quintero v. State*, 969 So.2d 1023 (Fla. 1st DCA 2007) (Table) (copy at Ex. AA).  The mandate issued December 28, 2007.  (Ex. BB).

On August 8, 2007 petitioner filed a motion for DNA testing pursuant to Florida Rule of Criminal Procedure 3.853.  (Ex. CC).  The motion was denied.  (Ex. DD). Rehearing was denied on December 18, 2007.  (Ex. FF).  The First DCA affirmed the denial order without written opinion on August 25, 2008.  *Quintero v. State*, 989

---

[1]Hereafter all references to exhibits will be to those provided at doc. 15, unless otherwise noted.  References to page numbers are to the page of the identified document as it appears on the court's Case Management/Electronic Computer Filing system ("CM/ECF").

So.2d 642 (Fla. 1st DCA 2008) (Table) (copy at Ex. GG).  The mandate issued September 22, 2008.

Petitioner initiated the instant federal habeas proceeding on July 10, 2008. (Doc. 1).  His amended petition was filed on July 31, 2008.  (Doc. 5).  Respondent concedes the petition is timely.  (Doc. 15, p. 23).


## LEGAL STANDARDS

### Section 2254 Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998),

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007)

(holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones*, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

<u>Exhaustion and Procedural Default</u>

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner "must give the state courts one full

---

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (I)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L.Ed.2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498

U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower v. Phillips, supra*; *Parker v. Dugger, supra*.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.*  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*


## DISCUSSION

Of the seven grounds for relief raised here, only one (Ground 4) is arguably entitled to merits review.  For purposes of clarity, the court will first address that claim, and then discuss why petitioner's remaining claims are procedurally defaulted.

**Claim Arguably Entitled To Merits Review**

**Ground 4.** **Denial of due process and a fair trial - petitioner's constitutional rights to a fair trial were violated when collateral crime evidence was admitted in which petitioner was never charged. (Doc. 5, pp. 10, 13-14)**

Petitioner contends his constitutional rights to a fair trial under the Fifth, Sixth and Fourteenth Amendments were violated when the trial court admitted evidence of an alleged crime or bad act for which petitioner was never charged or identified. (Doc. 5, pp. 10, 13).  According to petitioner, "[t]he court could only allow prior crimes and doings to be entered if petitioner was at the time of the crime or wrong act identified and/or charged." (*Id.*).  He complains that the uncharged crime became the feature of his trial.  Petitioner asserts he raised this claim in state court in a Rule 3.850 motion for post-conviction relief.  (Doc. 5, p. 10).

Respondent asserts petitioner exhausted his state court remedies with respect to this claim by raising it as Issue I in his direct appeal.  (Doc. 15, p. 48). Respondent is incorrect.  The claim petitioner raised on direct appeal challenged the admission of the collateral crime/bad act evidence on similar, but different grounds than those presented here.  It was in petitioner's second Rule 3.850 motion that he first raised the claim he now presents in Ground 4 of his amended federal habeas petition.  (Ex. X, pp. 220-21).  The following discussion elucidates this conclusion.

A.    Background and Summary of State Court Proceedings

Prior to trial, the State filed a notice of intent to introduce evidence of other crimes, wrongs or acts, namely, that on various occasions between February 25, 1993 and February 25, 1997, petitioner committed a sexual battery upon N.L., a person less than 12 years of age, by vaginal penetration.  (Ex. B).  The defense filed a motion in limine seeking to limit the introduction of any testimony of N.L., asserting that this prior allegation of sexual misconduct lacked sufficient similarity to have any evidentiary value.  (Ex. C).  The defense also filed a motion to declare Fla. Stat. § 90.404(2)(b) unconstitutional as violating separation of powers between

the legislature and the judiciary, and violating petitioner's due process rights.  (Ex. D).

At the outset of trial, the parties argued the admissibility of testimony from N.L.  The prosecutor argued that the testimony was being offered to corroborate the testimony of the victim, S.S.  Defense counsel argued that the testimony was being offered solely to prove propensity and did not meet the similarity requirements set forth in state law precedent.  Defense counsel further argued that the new version of § 90.404(2) was unconstitutional.  The trial court deferred ruling, and later admitted the evidence.  (Ex. F, pp. 5-23).

The collateral crime evidence is as follows.  Nohemy Lucio (N.L.), who was 18 years old at the time of petitioner's trial, testified that when she was 8 years old she lived with her mother, her sister Minerva Fonseca, petitioner (who was Minerva's boyfriend at the time), and Minerva's children.  (Ex. F, pp. 213-14).[4]  N.L. considered petitioner to be her brother-in-law.  The house was being rented by N.L.'s mother.  (*Id.*, p. 215).  N.L.'s mother worked outside the home, and petitioner was left in authority over the children when N.L.'s mother was not home.  There were times when N.L.'s mother was working and petitioner was the only adult in the house.  (*Id.*, pp. 215-16).  One day when N.L. came home from school, petitioner approached her, covered her mouth, threw her to the floor and raped her by taking her pants away and putting his penis in her vagina.  (*Id.*, pp. 217-18).  After that, on numerous other occasions petitioner came into N.L.'s bedroom at night when she there alone, covered her mouth, and raped her.  (*Id.*, pp. 218-19).  These acts occurred when N.L.'s mother was at work.  Petitioner told N.L. that if she told anyone, he would kill her with a machete and burn her behind the house and no one would know about it.  (*Id.*, p. 219).  N.L. told her sister Minerva that this was going on, but Minerva did not believe her.  (*Id.*).  At some point in time, N.L. and her mother moved out of the

---

[4]References to page numbers of the trial transcript are to those appearing in the upper right hand corner of the transcript.

house, and N.L. told her mother what had been happening.  Her mother took her to the Quincy police to tell them what had been happening.  The police did not do anything. (*Id.*, pp. 220-21).  Years later, in 2002, N.L. was with her mother visiting a friend's son in jail in Liberty County.  While there, N.L. saw petitioner playing basketball in the jail yard.  She learned from an official why petitioner was there. (*Id.*, p. 222).  Afterward, N.L. spoke to Deputy Swier to inform him about what had happened to her.  At the time N.L. saw petitioner at the jail, she did not know anything about S.S. or her family. (*Id.*).  N.L. identified petitioner in the courtroom. (*Id.*, p. 224).

The State presented several other witnesses at trial, including the victim S.S.; the victim's brother Jonathan Sansom; Jonathan's teacher Connie Conyers; the school nurse Johnette Walquist; Liberty County Deputy Sheriff investigator Steven Swier; Department of Children and Families child protective investigator Andrea Raines; Child Protection Team forensic interviewer Kimberly Ellis, and Child Protection Team pediatrician Dr. Samuel Moorer. (Ex. F, pp. 61-224).  N.L. was presented as the last witness in the State's case in chief.  The defense presented the testimony of two witnesses: N.L.'s sister Minerva Fonseca, and petitioner. (*Id.*, pp. 236-61).  The State had two rebuttal witnesses:  S.S.'s maternal grandmother Marlene Faust, and S.S.'s paternal grandmother Ruby Sansom. (*Id.*, pp. 263-82).

On direct appeal, petitioner claimed as Issue I that the trial court erred by admitting collateral crime evidence because that evidence had no similarity with the charged crime except that they both involved sexual battery on a child, and the sole purpose of the evidence was to show propensity.  Petitioner further argued that if the evidence was admitted under Fla. Stat. § 90.404(2)(b) based upon an interpretation of that statute as allowing any collateral crime evidence of child molestation regardless of its similarity, then the statute would be unconstitutional (as violative of the defendant's right to due process and a fair trial) for allowing collateral crime evidence solely for the purpose of proving propensity.  Finally, he

contended that even if Fla. Stat. § 90.404(2)(b) was found constitutional, the admission of the evidence was error because it did not meet the preexisting similarity standards for admission of relevant evidence in cases of familial custody, as required by state law precedent.  (Ex. I).

The state appellate court affirmed petitioner's convictions and sentences in a published opinion issued on December 30, 2004.  *Quintero v. State*, 889 So.2d 1013 (Fla. 1st DCA 2004) (copy at Ex. L).  Petitioner's claim concerning the collateral crime evidence was rejected on the merits without discussion.

In petitioner's second Rule 3.850 motion, petitioner raised as Issue 1 the precise claim he now raises as Ground 4 of his amended habeas petition:  that the admission of the collateral crime/bad act evidence denied him due process <u>because he had not been identified or charged with the collateral crime, and because the collateral bad act evidence had become a feature of his trial</u>.  (Ex. X, pp. 220-21).  The Rule 3.850 court found the claim procedurally barred, because petitioner's motion was successive, an abuse of the judicial process, and untimely.  (Ex. Y, p. 238).  The appellate court affirmed.  (Ex. AA).

B.    Exhaustion and Procedural Default

As the foregoing demonstrates, the claim petitioner presents here in Ground 4 was presented to the state court in petitioner's second Rule 3.850 motion, not in his direct appeal.  The Rule 3.850 court rejected the claim on the independent and adequate state grounds of two procedural bars.  Both procedural bars are firmly established and regularly followed in cases such as petitioner's.  Petitioner's claim could not be raised in a second Rule 3.850 motion because, except under limited circumstances not present in petitioner's case, Florida law bars successive Rule 3.850 motions.  *See* Fla. R. Crim. P. 3.850(f); *see also Moore v. State*, 820 So.2d 199, 205 (Fla. 2002) (holding that a second or successive motion for post-conviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion); *Boldender v. Dugger*, 564 So.2d

1057, 1058 n. 1 (Fla. 1990) (holding that issues which were raised on appeal or in defendant's first post-conviction motion, or which could and should have been raised previously in one of those forums, were procedurally barred); *Spaziano v. State*, 545 So.2d 843, 844 (Fla. 1989) ("Unless petitioner shows justification for failure to raise the present issue in the first petition, the second successive petition pursuant to Florida Rule of Criminal procedure 3.850 may be dismissed as an abuse of procedure."); *Christopher v. State*, 489 So.2d 22 (Fla. 1986) (successive Rule 3.850 motions are procedurally barred); *Francois v. State*, 470 So.2d 687 (Fla. 1985) (same); *Duncan v. State*, 728 So.2d 1237 (Fla. 3d DCA 1999) (a successive motion is an abuse of the judicial process when it attempts to litigate issues that were, could, or should have been raised either on direct appeal or in the defendant's previous motion).  Further, petitioner's second Rule 3.850 motion was filed more than two years from the date petitioner's judgment of conviction became final, and was therefore untimely.  *See* Fla. R. Crim. P. 3.850(b) (specifying time limits for post-conviction motions).

Based on the foregoing, this court considers Ground 4 of the instant amended petition procedurally defaulted.  Petitioner has made none of requisite showings to excuse his default.  Therefore, he is not entitled to federal habeas review of Ground 4.

Petitioner attempts to bypass his procedural default by asserting in his reply that he presented Ground 4 in his direct appeal.  (Doc. 21, p. 9).  He then recasts his argument in support of Ground 4 to align it with that presented to the state court on direct appeal.  Even giving petitioner the benefit of all doubt and construing Ground 4 of his federal habeas petition to present the identical claim raised in his direct appeal, he would not be entitled to federal habeas relief.

C.   Federal Review of State Court's Decision Concerning Admission of the Collateral Crime/Bad Act Evidence

Respondent contends the issue of the collateral crime evidence is purely one of state law that is not cognizable on federal habeas review.  (Doc. 15, pp. 48-49).

Respondent further argues that the state court evidentiary ruling was correct under Florida law and, therefore, did not deprive petitioner of fundamental fairness. (*Id.*, pp. 51-63). Finally, respondent argues that assuming *arguendo* that the trial court erred in admitting N.L.'s testimony, the error was harmless and was cured by the trial court's limiting instruction to the jury. (*Id.*, pp. 63-64).

Respondent is correct that federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998). Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief. Questions regarding state evidentiary rulings may be reviewed only when the alleged errors at trial "so infused the trial with unfairness as to deny due process of law." *Felker v. Turpin*, 83 F.3d 1303, 1311 (11th Cir. 1996) (quoting *Lisenba v. California*, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed.2d 166 (1941)); *see also Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). The erroneous ruling must have "had substantial and injurious effect or influence in determining the jury's verdict." *Sims*, 155 F.3d at 1312 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). "A denial of fundamental fairness occurs whenever the improper evidence is material in the sense of a crucial, critical, highly significant factor." *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998) (quotation omitted). Viewing the evidence in this case in its entirety, the admission of N.L.'s testimony was not erroneous, and did not so infuse the trial with unfairness as to deny petitioner fundamental fairness and due process of law.

Petitioner was charged with sexual battery of S.S., a child under 12 years of age, by oral, anal, or vaginal penetration by or union with the sexual organ of S.S. or anal penetration by an object (Count I). He was also charged with lewd or lascivious molestation by touching in a lewd or lascivious manner the breasts,

genital area, or buttocks, or the clothing covering them, of S.S., or forcing or enticing S.S. to so touch him (Count II).  Both counts were alleged to have occurred between July 18, 2000, and May 20, 2002.  (Ex. A, p. 4).

S.S. testified that she was born on July 18, 1990, and was 12 years old at the time of trial on June 10-11, 2003. (Ex. F, p. 62).  During the time in question, S.S. and her brother lived with her grandmother Marlene Faust, and petitioner, who was Marlene's boyfriend.  They lived in petitioner's house.  Marlene worked nights at Burger King.  When she was at work, S.S. and her brother would be left at petitioner's house with petitioner.  (*Id.*, p. 70).  On several occasions when Marlene was at work, petitioner would come into S.S.'s bedroom at night when she was alone in bed and touch her vagina and breasts with his hand and have sexual intercourse with her.  (*Id.*, pp. 71, 78-82). This happened "every night."  (*Id.*, pp. 82, 86).

The collateral crime evidence, N.L.'s testimony, is detailed above.

Under Florida law, evidence of other crimes, wrongs, or acts is admissible if it is found to be relevant for any purpose, save that of showing bad character or propensity.  *Williams v. State*, 110 So.2d 654 (Fla. 1959).  In *Heuring v. State*, 513 So.2d 122 (Fla. 1987), the Supreme Court of Florida expanded the *Williams* rule in cases involving sexual battery committed within the familial context.  It determined that similar fact evidence arising out of the familial context is relevant to corroborate the victim's testimony, and that the probative value of such evidence outweighs its prejudicial effect. *Id.* at 125.  In *Heuring*, the defendant was charged with committing sexual battery upon his stepdaughter.  The trial court permitted the defendant's adult daughter to testify that she had been sexually abused by the defendant years earlier when she was roughly the same age as the victim.  In upholding the admissibility of the testimony, the Florida Supreme Court stated:

> Cases involving sexual battery committed within the familial context present special problems.  The victim knows the perpetrator, e.g., a parent, and identity is not an issue.  The victim is typically the sole eyewitness and corroborative evidence is scant.  Credibility becomes

the focal issue.  In such cases, some courts have in effect relaxed the strict standard normally applicable to similar fact evidence.  These courts have allowed evidence of a parent's sexual battery on another family member as relevant to modus operandi, scheme, plan, or design, even though the distinction between sexual design and sexual disposition is often tenuous.  We find that the better approach treats similar fact evidence as simply relevant to corroborate the victim's testimony, and recognizes that in such cases the evidence's probative value outweighs its prejudicial effect.

*Id.*, at 124-25.

In *Saffor v. State*, 660 So.2d 668 (Fla. 1995), the Court explained how the relaxed standard of admissibility discussed in *Heuring* should be applied in cases where both the charged and collateral offenses occurred in the familial setting:

We hold . . . that when the collateral sex crime and the charged offense both occur in the familial context, this constitutes a significant similarity for purposes of the *Williams* rule, but that these facts, standing alone, are insufficient to authorize admission of the collateral sex crime evidence.  There must be some additional showing of similarity in order for the collateral sex crime evidence to be admissible. The additional showing of similarity will vary depending on the facts of the case and must be determined on a case-by-case basis. Thus, we do not eliminate the requirement of similarity which undergirds the *Williams* rule.  However, the strict similarity in the nature of the offenses and the circumstances surrounding their commission which would be required in cases occurring outside the familial context is relaxed by virtue of the evidence proving that both crimes were committed in the familial context.

*Id.* at 672.

Section 90.404(2), Florida Statutes, which codified the holding in *Williams*, provides in pertinent part:

(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

Fla. Stat. § 90.404(2)(a)(2001).

Effective July 1, 2001, section 90.404(2) was amended to create a new paragraph (b) allowing the admission of evidence of other crimes, wrongs, or acts of child molestation when a defendant is charged with a crime involving child molestation, and providing that such evidence may be considered for its bearing on any matter to which it is relevant:

> (b)1.  In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
>
> 2.  For the purposes of this paragraph, the term "child molestation" means conduct proscribed by s. 794.011 or s. 800.04 when committed against a person 16 years of age or younger.

Fla. Stat. § 90.404(2)(b) (2001).   The Florida Supreme Court has interpreted § 90.404(2)(b) as "broadly provid[ing] that evidence of the defendant's commission of other acts of child molestation is admissible regardless of whether the charged and collateral offenses occurred in the familial context or whether they share any similarity.  To this extent, section 90.404(2)(b) abrogates our decisions in *Heuring*, [*State v.*] *Rawls,* [649 So.2d 1350 (Fla. 1994)], and *Saffor.*"  *McLean v. State*, 934 So.2d 1248, 1259 (Fla. 2006).  The Court went on to hold that the collateral crime evidence must still be relevant in order to be admissible under § 90.404(2)(b), and that even if admissible under § 90.404(2)(b), the collateral crime evidence is still subject to weighing under Fla. Stat. § 90.403 to assess probative value versus unfair prejudice, confusion of issues, misleading the jury, and unnecessary cumulative evidence. *McLean*, 934 So.2d at 1259.  The Court explained that in performing this analysis:

> [T]he similarity of the prior act and the charged offense remains part of a court's analysis in determining whether to admit the evidence in two ways.  First, the less similar the prior acts, the less relevant they are to the charged crime, and therefore the less likely they will be admissible.  Second, the less similar the prior acts, the more likely that the probative value of this evidence will be "substantially outweighed by

the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.

*McLean*, 934 So.2d at 1259 (quoting Fla. Stat. § 90.403).  The *McLean* Court set forth the following non-exclusive factors to guide a determination of whether the collateral crime evidence is admissible:  (1) whether the prior acts were proved by clear and convincing evidence; (2) whether the probative value of the prior acts is substantially outweighed by the danger of unfair prejudice (which involves consideration of the similarity of the prior acts to the charged act regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; the closeness in time of the prior acts to the charged act; the frequency of the prior acts; and the presence or lack of intervening circumstances); (3) whether the evidence of the prior acts will confuse or mislead jurors by distracting them from the central issues of the trial; and (4) whether the evidence is needlessly cumulative of other evidence bearing on the victim's credibility.  *Id.* at 1262.  Finally, the trial court must guard against allowing the collateral crime testimony to become a feature of the trial, and must also give an appropriate cautionary instruction, if requested.  *Id.*

In the instant case, identity was not an issue.  The collateral crime evidence was offered to corroborate the victim's testimony.  N.L.'s testimony provided clear and convincing proof, i.e., proof resulting in reasonable certainty, that petitioner sexually abused N.L. as described.  Both the charged offenses and the collateral offenses occurred within familial or custodial settings.  *See State v. Rawls*, 649 So.2d 1350 (Fla. 1994) (discussing what may constitute custodial and familial relationships).  S.S. and her grandmother Marlene had been living in petitioner's home throughout the time period in question, and petitioner and Marlene were in a boyfriend/girlfriend relationship.  N.L. was living in the home with her sister who was petitioner's girlfriend and mother of his children.  The following similarities existed between the charged offenses and the collateral offenses:  (1) both victims were

young girls between 8 or 9 (N.L.) and 10 (S.S.) years of age at the time of the abuse, (2) both victims were related to petitioner's live-in girlfriend at the time, (3) both lived in the home with petitioner when the abuse occurred, (4) the abuse occurred on numerous occasions over a period of a year or more, and (5) the abuse occurred with petitioner entering the victim's bedroom at night when she was alone, and petitioner having sexual intercourse with her.  The familial context, coupled with the additional similarities of victim age and gender, location in the home, time of day, and type of sexual abuse, provide sufficient similarity to satisfy the standard for admissibility established by state law at the time of petitioner's trial, as well as that established  subsequently in *McLean, supra*.  Finally, N.L.'s testimony did not distract the jury from the central issues of the trial, nor was her testimony made a feature of the trial.  The jury was instructed that N.L.'s testimony was admissible for the limited purpose of corroborating the testimony of S.S., and that they should consider that testimony only as it related to corroboration. (Ex. F, pp. 235-36).  There is no indication that the jury failed to follow the limiting instruction of the trial court.

The trial court's admission of the testimony was not erroneous, and did not violate petitioner's right to a fair trial.  *See Estelle*, 502 U.S. at 70 (there is nothing in the Due Process Clause that requires the State to refrain from introducing relevant evidence).  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

<u>Procedurally Defaulted Claims</u>

Ground 1.   <u>Denial of due process - Count I of the Information cannot support a conviction where penetration was alleged and the evidence presented did not support a finding of penetration sufficient to permit a conviction.  (Doc. 5, pp. 5-7 )</u>

Ground 2.   <u>Denial of due process - the state erred in joining two or more distinct offenses in one count of the Information.  (Doc. 5, pp. 5,</u>

**7-9)**

**Ground 3.** <u>Denial of due process - fundamental error occurred in the prosecution for sexual battery upon a child where the court instructed that union in the sense of coming into contact was an alternative to the element of penetration.  (Doc. 5, pp. 10-13)</u>

**Ground 5.** <u>The amended information and the state's seeking of the maximum sentence arose out of vindictiveness by the state attorney.  (Doc. 5, pp. 16-17)</u>

**Ground 6.** <u>Trial counsel was ineffective for failing to object and argue a "Frye" test issue and move for a mistrial.  (Doc. 5, pp. 17-18)</u>

**Ground 7.** <u>The weight of the evidence does not support a verdict of guilt in a case where actual innocence has been articulated from the beginning.  (Doc. 5, pp. 18-21)</u>

Petitioner raised Grounds 1, 2 and 3 in his first Rule 3.850 motion.  (Ex. R). The Rule 3.850 court denied relief, finding the claims procedurally barred as follows: "Each of these issues could have or should have been raised in [petitioner's] direct appeal.  None of the issues are appropriate for post conviction consideration under Rule 3.850, Florida Rules of Criminal Procedure."  (Ex. S).  The appellate court affirmed the denial order.  (Ex. U).

The state court's procedural bar ruling rested on adequate state grounds independent of the federal question.  It is well established in Florida that issues which could be, but are not, raised on direct appeal may not be the subject of a subsequent Rule 3.850 motion for post-conviction relief.  *Johnson v. State*, 903 So.2d 888 (Fla. 2005) (holding that issue raised in Rule 3.850 motion was procedurally barred where it could have been raised on direct appeal but was not); *Kennedy v. State*, 547 So.2d 912 (Fla. 1989) (same).  Grounds 1, 2 and 3 of the instant petition are therefore considered procedurally defaulted.  Petitioner has made none of the requisite showings to excuse his default.  Therefore, he is not entitled to federal habeas review.

As to petitioner's remaining grounds, Grounds 5, 6 and 7, petitioner raised these issues in his second Rule 3.850 motion.  (Ex. X).  As discussed above, the state court denied relief on the grounds that the motion was procedurally barred as successive, an abuse of process, and untimely.  (Ex. Y) The First DCA affirmed the denial order.  (Ex. AA).  The state's procedural bar ruling rested on adequate state grounds independent of the federal question.  *See* discussion *supra* Ground 4. Therefore, this court considers Grounds 5, 6 and 7 procedurally defaulted. Petitioner has made none of the requisite showings to excuse his default.  As such, he is not entitled to federal habeas review of these claims.

Accordingly, it is respectfully RECOMMENDED:

That the amended petition for writ of habeas corpus (doc. 5), challenging the convictions and sentences in *State of Florida v. Jose Quintero* in the Circuit Court of Liberty County, Florida, case no. 02-34, be DENIED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 13th day of April, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**